# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JORDAN LEFF, JAMES SALLINGER,
AND LAUREN SALLINGER,

                          Plaintiffs,

    vs.

HEADWAY TECHNOLOGIES, INC.;
HUTCHINSON TECHNOLOGY INC.;
MAGNECOMP PRECISION
TECHNOLOGY PUBLIC CO. LTD.;
NAT PERIPHERAL (DONG GUAN) CO.,
LTD.; NAT PERIPHERAL (H.K.) CO.,
LTD.; NHK SPRING CO. LTD.; NHK
INTERNATIONAL CORPORATION;
NHK SPRING (THAILAND) CO., LTD.;
NHK SPRING PRECISION
(GUANGZHOU) CO., LTD.; SAE
MAGNETICS (H.K.) LTD.; AND TDK
CORPORATION,

                          Defendants.

Case No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANED

Plaintiffs Jordan Leff, James Sallinger and Lauren Sallinger (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" as defined below), bring this class action for damages, injunctive relief and other relief pursuant to federal antitrust laws, state antitrust, unfair competition, and consumer protection laws, and the laws of unjust enrichment against Defendants Headway Technologies, Inc.; Hutchinson Technology Inc.; Magnecomp Precision Technology Public Co. Ltd.; NAT Peripheral (Dong Guan) Co., Ltd.; NAT Peripheral (H.K.) Co., Ltd.; NHK Spring Co. Ltd.; NHK International Corporation; NHK Spring (Thailand) Co., Ltd.; NHK Spring Precision (Guangzhou) Co., Ltd.; SAE Magnetics (H.K.) LTD; and TDK Corporation (collectively, "Defendants"). Plaintiffs' claims arise from Defendants' unlawful agreement to eliminate competition, fix prices, and allocate markets for hard disk drive suspension assemblies ("HDD Suspension Assemblies") sold in the United States. Plaintiffs' allegations are made on personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters.

## I.      NATURE OF THE ACTION

1.      Plaintiffs bring this antitrust action against the dominant manufacturers and suppliers of HDD Suspension Assemblies for engaging in a global anticompetitive conspiracy to fix prices and allocate market shares for HDD Suspension Assembles. At all relevant times, Defendant manufactured and sold HDD Suspension Assemblies throughout and into the United States. As of 2016, Defendants NHK and TDK, and their subsidiaries, were the leading manufacturers of HDD Suspension Assemblies with a combined worldwide market share in excess of 90 percent.[1]

---

[1] Sachiko Sakamaki, *TDK, NHK Spring raided over price collusion suspicions*, MLEX (Jul. 26, 2016).

1

2.      HDD Suspension Assemblies are a key component of HDDs, which are used to store information electronically. Assistant Attorney General, Makan Delrahim, of the U.S. Department of Justice's ("DOJ") Antitrust Division described HDD Suspension Assemblies as "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."[2]

3.      HDD Suspension Assemblies are either incorporated into electronic devices, such as desktop and laptop computers, gaming consoles, and MP3 players, or sold as stand-alone storage devices. An HDD uses a magnetic recording head to read from and write onto a spinning disk contained in the hard drive. An HDD Suspension Assembly is an electro-mechanical component that holds a disk drive's recording head at a microscopic distance above the drive's disks.

4.      From approximately May 2008 through at least April 2016 (the "Class Period"), Defendants and their co-conspirators contracted, combined, and/or conspired to fix, raise, maintain, and/or stabilize prices of and allocate market shares for HDD Suspension Assemblies in the United States.

5.      In carrying out their global combination and conspiracy, Defendants engaged in discussions and attended meetings during which they made anticompetitive agreements not to compete on prices, as well as fix prices, and allocate respective market shares for HDD Suspension Assemblies sold in the United States. Defendants also exchanged HDD Suspension Assemblies pricing information, including anticipated pricing quotes, which they relied upon for their

---

[2] *See* Exhibit 1, Justice News, *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, UNITED STATES DEPARTMENT OF JUSTICE (Jul. 29, 2019), *available at* https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk ("DOJ Release").

negotiations with United States and foreign customers that purchased HDD Suspension Assemblies.

6.      Competition authorities in the United States and across the globe have been investigating potential price-fixing of HDD Suspension Assemblies since at least 2016. In July 2016, the DOJ opened an investigation relating to HDD Suspension Assemblies. NHK Spring later disclosed that on July 26, 2016, the DOJ conducted an on-site inspection of an NHK company.

7.      Also in July 2016, the Japanese Fair Trade Commission ("JFTC") raided the offices of NHK and TDK, on suspicion that the companies were colluding and fixing prices for HDD suspension components. On February 9, 2018, the JFTC issued a cease and desist order to Defendants TDK and NHK, determining they substantially restrained competition in the HDD Suspension Assemblies market by agreeing to maintain sales prices, fining  NHK Spring Co. Ltd. and one of its subsidiaries 1.1 billion yen (nearly $10 million) for price-fixing HDD Suspension Assemblies. TDK Corporation cooperated with the Japanese regulators.

8.      South Korean and Brazilian competition authorities have also been investigating HDD Suspension Assemblies price-fixing. In April 2018, Brazilian antitrust authorities launched an investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to fix prices of HDD Suspension Assemblies. The cartel allegedly shared data and allocated customers to maintain artificially high prices on HDD Suspension Assemblies used in hard disk drives.

9.      In July 2019, the DOJ filed a one count information against NHK Spring Co. Ltd, charging the company with fixing prices on HDD Suspension Assemblies.[3] NHK Spring has

---

[3] *See* Exhibit 2, Information, *United States of America v. D-1: NHK Spring Co., Ltd.*, 19-cr-20503 (E.D. Mich, Jul. 29, 2019), ECF No. 1.

agreed to plead guilty and pay a $28.5 million criminal fine, subject to court approval, for its role in the conspiracy to suppress and eliminate competition by fixing prices of HDD Suspension Assemblies sold in the United States and elsewhere,[4] and will cooperative with the investigation.

10.     Defendants and their co-conspirators have participated in a combination and conspiracy to suppress and eliminate competition for HDD Suspension Assemblies by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HDD Suspension Assemblies sold in the United States and elsewhere. The combination and conspiracy engaged in by Defendants and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment. As a direct and proximate cause of Defendants' anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid more for HDD Suspension Assemblies that they otherwise would have paid in a competitive market, and have thereby suffered antitrust injury to their business or property.

## II.     JURISDICTION AND VENUE

11.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seek to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

---

[4] *See* Exhibit 1, DOJ Release.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

13.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

14.     This Court has *in personam* jurisdiction over Defendants because each, either directly or through ownership and/or control of its subsidiaries and/or affiliates, *inter alia* (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD Suspension Assemblies throughout the United States as a whole, including in this District; or (c) engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business in the United States, including in this District, and they have purposefully availed themselves of the laws of the United States. Each Defendant has transacted business, maintained substantial contacts, or

committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. The scheme and conspiracy have been directed at, and has had the intended effect of causing injury to, persons residing in, located in, or doing business throughout the United States, including in this District.

15.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

17.     HDD Suspension Assemblies manufactured abroad by Defendants and sold as stand-alone products or for use in another product that were either manufactured in the United States or manufactured abroad and sold in the United States, are goods brought into the United States for sale and therefore constitute import commerce. To the extent any HDD Suspension Assemblies are purchased in the United States, and such products do not constitute import commerce, Defendants' unlawful conduct with respect thereto, as more fully alleged herein during the Class Period, had and continues to have a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, caused antitrust injury to Plaintiffs.

18.     By reason of the unlawful activities hereinafter alleged, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, and allocate the market and

customers in the United States for HDD Suspension Assemblies, which conspiracy unreasonably restrained trade and adversely affected the market for HDD Suspension Assemblies.

19.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased a product in the United States

## III.    THE PARTIES

### A.      Plaintiffs

20.     Plaintiff, Jordan Leff, is a resident of Michigan. During the Class Period, Mr. Leff purchased at least one HDD Suspension Assembly indirectly from at least one Defendant, and was injured in his business or property as a result of Defendants' unlawful conduct alleged herein.

21.     Plaintiff, James Sallinger, is a resident of Rhode Island. During the Class Period, Mr. Sallinger purchased at least one HDD Suspension Assembly indirectly from at least one Defendant, and was injured in his business or property as a result of Defendants' unlawful conduct alleged herein.

22.     Plaintiff, Lauren Sallinger, is a resident of New York. During the Class Period, Ms. Sallinger purchased at least one HDD Suspension Assembly indirectly from at least one Defendant, and was injured in her business or property as a result of Defendants' unlawful conduct alleged herein.

### B.      NHK Defendants

23.     Defendant NHK Spring Co. Ltd. ("NHK Spring") is a Japanese corporation with its headquarters located at 3-10 Fukuura, Kanazawa-ku, Yokohama, 236-0004 Japan. During the Class Period, NHK Spring manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

7

24.     Defendant NHK International Corporation ("NHK International") is Michigan corporation, established in October 1976, with its principal place of business located at 46855 Magellan Drive, Novi, Michigan 48377. It is an affiliate of and wholly controlled by NHK Spring. During the Class Period, NHK International manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

25.     Defendant NHK Spring Precision (Guangzhou) Co., Ltd. ("NHK Spring Precision (Guangzhou)") is a Chinese corporation, with its principal place of business located in Guangzhou, China. It is an affiliate of and wholly controlled by NHK Spring. During the Class Period, Defendant NHK Spring Precision (Guangzhou) manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

26.     Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") is a China-based subsidiary of NHK Spring with its principal place of business located in Guangdong, China. It is an affiliate of and wholly controlled by NHK Spring. During the Class Period, NAT Dong Guan manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

27.     Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a China-based subsidiary, wholly owned by NHK Spring, with its principal place of business located in Hong Kong, China. In 2003, NAT H.K. began as a joint venture between SAE Magnetics (H.K.) Ltd., a wholly owned subsidiary of TDK Corp. and NHK Spring. During the Class Period, NAT H.K. manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies,

either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

28.     Defendant NHK Spring (Thailand) Co., Ltd. ("NHK Thailand") is a Thai corporation, with its principal place of business located in Samutprakarn, Thailand. NHK Thailand is an affiliate of and wholly controlled by NHK Spring. During the Class Period, NHK Thailand manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

### C.     TDK Defendants

29.     Defendant TDK Corporation ("TDK Corp.") is a Japanese corporation with its headquarters located at Shibaura Renasite Tower, 3-9-1 Dnibaura, Minato-Ku, Tokyo 108-0023, Japan. During the Class Period, TDK Corp. manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

30.     Defendant Magnecomp Precision Technology Public Co. Ltd. ("Magnecomp Precision") is a Thai corporation, with its principal place of business located in Ayutthaya, Thailand. It is an affiliate of and wholly controlled by TDK Corporation. During the Class Period, TDK Corp. manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

31.     Defendant SAE Magnetics (H.K.) LTD. ("SAE") is a Chinese corporation, a subsidiary of TDK, with its principal place of business located in Hong Kong, China. During the Class Period, SAE manufactured, marketed, supplied, serviced, distributed, and/or sold HDD

Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

32. Defendant Hutchinson Technology Inc. ("Hutchinson") is a U.S. subsidiary of TDK Corp., a Minnesota corporation with its principal place of business located at 40 West Highland Park Drive NE, Hutchinson, Minnesota 55350. TDK Corp. acquired Hutchinson on October 6, 2016 for $126 million. It is an affiliate and wholly owned by TDK Corp. During the Class Period, Hutchinson manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

33. Defendant Headway Technologies, Inc. ("Headway") is a U.S. subsidiary of TDK Corp., a Delaware corporation with its principal place of business located at 682 South Hillview Drive, Milpitas, California 95035. It is an affiliate of and wholly controlled by TDK Corp. During the Class Period, Headway manufactured, marketed, supplied, serviced, distributed, and/or sold HDD Suspension Assemblies, either directly or indirectly through its subsidiaries and/or affiliates, to customers throughout the United States, including in this District.

## IV.   AGENTS AND CO-CONSPIRATORS

34. On information and belief, other corporations, partnerships, or business entities, currently unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraints of trade. Various persons that are not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

35. These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to fix the prices of, and allocate market shares for, HDD Suspension Assemblies. Plaintiffs reserve the right to name some or all of these entities as Defendants at a later date.

## V.     INTERSTATE TRADE AND COMMERCE

36.     Throughout the Class Period, each Defendant, or one or more of its subsidiaries, sold HDD Suspension Assemblies in the United States, in a continuous and uninterrupted flow of interstate and international commerce, including through and into this District.

37.     During the Class Period, Defendants collectively controlled the vast majority of the market for HDD Suspension Assemblies, both globally and in the United States.

38.     Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to purchasers of HDD Suspension Assemblies located in states other than the states in which Defendants are located, as well throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the United States markets for HDD Suspension Assemblies.

## VI.     FACTUAL ALLEGATIONS

### A.     HDDs and Suspension Assemblies

39.     A Hard Disk Drive or HDD is a hardware device that stores digital content and retrieves digital information. HDDs are an essential component in a wide range of electronic hardware products. In order to function, many electronic devices require an HDD. HDDs can be stand-alone external storage devices or fully integrated into another piece of hardware such as desktop or laptop computers, video game consoles, and copying machines and printers. HDDs store digital content such as documents, pictures, music, videos, programs or applications, and operating systems. There are four general market segments that are covered by HDD usage: desktop HDDs, mobile (laptop) HDDs, enterprise HDDs, and consumer electronic HDDs.

40.     During the Class Period, over four billion HDDs were manufactured worldwide.[5] In 2018, nearly 400 million units were shipped globally.[6]

41.     Within an HDD's casing are a series of disks called "platters" that contain the device's data. The platters spin inside the HDD at a speed of anywhere from 15 MPH to 36 MPH. A computer's CPU and motherboard communicate to a magnetic recording head within the HDD, known as a "read/write head," that tells the head where to move above the platter. The magnetic head provides an electrical charge to a "sector" on the platter. Electrical signals travel from the read/write head, through the HDD Suspension Assembly's electrical conductors and into the target platter. These electronic bits are translated by the computer into readable digital content that the user of the HDD can read, watch, or listen to.[7]

---

[5] Arnold Holst, *Worldwide unit shipments of hard disk drives (HDD) from 1976 to 2022*, STATISTA *available at* https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/

[6] *Id.*

[7] *See* Hard Disk Drive Suspensions, TDK HUTCHINSON TECHNOLOGY INC., *available at* https://www.hutchinson.tdk.com/WebHTI/Contents/PageId/31.



42.     Figure 1.[8]

43.     HDD Suspension Assemblies are electro-mechanical components that position and hold a HDD's read/write head at a safe and consistent height above the spinning platters. This allows the magnetic head to read data on the platters. The distance between the read/write head and the platters is referred to as "flying height" and is usually a microscopic five to eight nanometers[9] above the HDD's spinning platters. A HDD Suspension Assembly must maintain the read/write head at a safe distance from the platter's surface in order to prevent damage to the information stored on the platter. A "head crash" is where an HDD incurs some shock event which forces the magnetic head towards the platter, which if impacted, destroys information stored on the disk. All HDDs require a HDD Suspension Assembly to function properly and maintain the miniscule "flying height."

---

[8]  Roderick Bauer, HDD vs SSD: What Does the Future for Storage Hold? BACKBLAZE (Mar. 6, 2018), available at https://www.backblaze.com/blog/ssd-vs-hdd-future-of-storage/
[9]  By comparison, the diameter of an average strand of human hair is about 50,000 nanometers.

44.    A HDD Suspension Assembly consists of three main components: a base plate, a load beam and a flexure.



Figure 2.[10]



Figure 3.[11]

---

[10] Mohammad R. Kazemi, Encyclopedia of Tribology, *Suspension Assembly for Hard Disk Drive*, Wang Q.J. & Chung YW. SPRINGER (2013 ed.) *available at* https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140#Fig19482 (highlighting added).

[11] Disk Drive Suspension Division Products, NHK SPRING (THAILAND), *available at* http://www.kmtomyam.com/design/en/our_product/producttopic3.php

14

45.     Manufacturers and suppliers of HDD Suspension Assemblies sell them directly to HDD manufacturers, which in turn sell HDDs containing the HDD Suppression Assemblies to manufacturers of products that include HDDs or to consumers. In 2016, TDK itself touted global sales of its magnetic application products, which included HDD magnetic heads and HDD Suspension Assemblies, at over $2.9 billion.[12] TDK's annual total sales for all products in 2016 were around $10.2 billion[13] and have increased in recent years to approximately $11 billion currently.[14]

### B.     Unlawful Price-Fixing Conspiracy and Market Allocation Agreement

46.     From at least as early as May 2008 and continuing until at least April 2016, Defendants knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by fixing prices for HDD Suspension Assemblies sold in the United States and elsewhere.

47.     To carry out their conspiracy, Defendants engaged in a variety of unlawful activities. At times, Defendants engaged in discussions and attended meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for, HDD suspension assembles to be sold in the U.S. and globally.

48.     Defendants also exchanged HDD Suspension Assemblies pricing information, including anticipated pricing quotes. Defendants used the exchanged pricing information to inform

---

[12] TDK Annual Report 2016 at 34, *available at* https://www.tdk.com/ir/ir_library/annual/pdf/2016_all.pdf

[13] TDK Press News Center⎪Press Release: *TDK Corporation Announces Completion of Hutchinson Technology Acquisition* TDK GLOBAL (Oct. 6, 2016), *available at* https://www.tdk.com/corp/en/news_center/press/201610062540.htm

[14] Sakamaki, *supra,* n.2

their negotiations with U.S. and foreign customers that purchased HDD Suspension Assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere.

49.     The conspiracy engaged in by Defendants was a *per se* unlawful restraint of trade and commerce in violation of various state antitrust laws.

### 1.     DOJ and JFTC Investigations

50.     On July 26, 2016, JFTC raided the offices of TDK Corp. on suspicion that the company was in violation of antitrust laws. That same day, JFTC and DOJ also conducted onsite inspections of NHK Spring and NHK International based on the same basis:

> On July 26, 2016, [NHK Spring] and NHK International Corporation, a consolidated subsidiary in the United States, underwent an on-site inspection by the Japan Fair Trade Commission and the United States Department of Justice on suspicion of violating the Antimonopoly Act of Japan and the Antitrust Law of the United States concerning trading of hard disk drive devices.[15]

51.     On February 9, 2018, JFTC issued a cease and desist order and fined NHK Spring and NAT H.K. 1.1 billion yen (almost $10 million) for price-fixing HDD Suspension Assemblies.[16] TDK Corp. and its subsidiaries avoided any financial penalty by applying for leniency and cooperating with the Japanese regulators.

52.     On July 29, 2019, DOJ filed a one-count Information in this court against NHK Spring, charging the company with price-fixing HDD Suspension Assemblies. According to the Information, NHK Spring and its co-conspirators did the following for the purpose of forming and carrying out their conspiracy:

---

[15] NHK Spring and Consolidated Subsidiaries Consolidated Financial Statements for the years ended March 31, 2018 and 2017 with Independent Auditor's Report at 34, *available at* https://www.nhkspg.co.jp/eng/ir/pdf/Annual%20Report%202018.pdf

[16] *Id.*

(a)     engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assembles to be sold in the United States and elsewhere;

(b)     exchanging pricing information for HDD Suspension Assemblies, including anticipated pricing quotes in the United States and elsewhere;

(c)     relying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD Suspension Assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere;

(d)     selling HDD Suspension Assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

(e)     accepting payment for HDD Suspension Assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices.

53.     NHK Spring has agreed to plead guilty and pay a $28.5 million criminal fine, subject to court approval.

### 2.     Additional Global Investigations

54.     In January 2018, it was reported that South Korea's antitrust regulator, KFTC, was investigating suspected collusion by manufacturers of HDD Suspension Assemblies.

55.     In April 2018, Brazil's antitrust regulator, CADE, revealed that it was also investigating Defendants' conspiracy. CADE indicated that anticompetitive practices were conducted by at least 38 individuals and were implemented through meetings and e-mail exchanges. CADE's investigation was initiated to "investigate the practice of an international cartel." CADE investigated TDK along with four other companies for price fixing allegations that

span from 2003 to May 2016 and thus far has uncovered evidence that the companies colluded to fix prices and divide the market based on quotation requests from customers.[17]

### C.    The Structure and Characteristics of the HDD Suspension Assemblies Market Render the Conspiracy Plausible

56.    The structure and characteristics of the HDD Suspension Assemblies market are conducive to a price-fixing agreement, including (1) high market concentration; (2) high barriers to entry; (3) HDD products exhibit the homogeneity of commodity goods; and (5) inelasticity of demand.

### 1.    The HDD Suspension Assemblies Market Is Highly Concentrated

57.    The demand for HDD Suspension Assemblies depends on the demand for HDDs, which in turn is driven by demand for storage, primarily generated by increasingly complex software.

58.    Beginning in the 1980s, HDDs were incorporated into computers as well as a large section of consumer electronics appliances, such as digital video recorders, MP3 players, digital cameras, and mobile phones.

59.    In the 1980s, there were more than 20 producers of HDD Suspension Assemblies. However, by 2005, there were fewer than five major producers left in the market.

60.    In the mid-1990s, Hutchinson became the main producer of HDD Suspension Assemblies, holding a 70% market share and generating approximately $450 million per year in revenue.

---

[17] Kyle Jahner, *Brazil Says 5 Cos. May Have Fixed Prices For Hard Disk Parts*, LAW 360,  (Apr. 27, 2018), *available at* https://www.law360.com/articles/1038188/brazil-says-5-cos-may-have-fixed-prices-for-hard-disk-parts

61.     In 2003, Defendants SAE and NHK Spring entered into a joint venture to form NAT H.K. NAT H.K. engages in the manufacture of HDD Suspension Assemblies. The joint venture was terminated in April 2015, and SAE's share in NAT Hong Kong was transferred to NHK Spring.

62.     By 2005, three companies, Hutchinson, NHK Spring, and Magnecomp Precision collectively controlled approximately 94% of the global HDD Suspension Assembly market. Hutchinson held a 55% market share, NHK Spring held a 22% market share, and Magnecomp Precision held a 20% market share.

63.     In 2007, TDK Corp. announced its acquisition of a majority share of a formerly independent HDD suspension assembly manufacturer, Magnecomp Precision. Following this acquisition, which was completed in 2009, TDK Corp. began producing HDD Suspension Assemblies.

64.     By 2012, Defendants TDK Corp., NHK Spring, and Hutchinson collectively controlled 96% of the global market.

65.     Typifying the interrelationships in the HDD market, throughout the Class Period, SAE Magnetics was also one of the Hutchinson's top three customers.[18] In addition, Defendants also cross-licensed each others' products, including suspension assemblies.[19]

66.     In November 2015, TDK Corp. announced its acquisition of Hutchinson; the acquisition was completed in October 2016. Following the acquisition, TDK Corp.'s market share grew to 55-60% market share, and TDK Corp. noted that NHK Spring was its only competitor in the global market for HDD Suspension Assemblies.[20]

67.     Throughout the Class Period, Defendants controlled approximately 90-95% of the global market for HDD Suspension Assemblies.

**2.     The HDD Suspension Assemblies Market Has High Barriers to Entry**

68.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

---

[18] *See, e.g.*, Hutchinson Annual Report Form 10-K, at 5, UNITED STATES SECURITIES EXCHANGE Commission (2008) *available at* https://www.sec.gov/Archives/edgar/data/772897/000119312508252088/d10k.htm; *see also* Hutchinson Annual Report Form 10-K, at 4, UNITED STATES SECURITIES EXCHANGE COMMISSION (2012) *available at* https://www.sec.gov/Archives/edgar/data/772897/000117184312004472/f10k_121212.htm, *see also* Hutchinson Annual Report Form 10-K, at 4, UNITED STATES SECURITIES EXCHANGE COMMISSION (2015) *available at* https://www.sec.gov/Archives/edgar/data/772897/000157587215000208/10k.htm

[19] *See Hutchison, Magnecomp drop lawsuits, cooperate,* MINNEAPOLIS, ST. PAUL BUSINESS JOURNAL (Dec. 3, 2001), *available at* https://www.bizjournals.com/twincities/stories/2001/12/03/daily8.html.

[20] TDK Annual Report 2017 at 45, *available at* https://www.tdk.com/ir/ir_library/annual/pdf/2017_all.pdf

69.     There are substantial barriers that preclude, reduce, or make more difficult entry into the HDD Suspension Assemblies market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and longstanding customer relationships. Indeed, even Defendant Hutchinson admitted at one point that there are substantial barriers to entry into the HDD Suspension Assembly market, stating, "we believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[21]

70.     Collectively, Defendants also own the majority of patents for HDD Suspension Assemblies. These patents potentially place a significant and costly burden on potential new entrants, which must avoid infringing on the patents when entering the market with a new product.

71.     In addition, other types of data storage, such as Solid-State Drives and devices that utilize flash memory, have become an emerging competitive threat to the HDD sector, making entry for a new company into the HDD market risky due to a possibility of future decreased demand for HDDs.[22]

### 3.     HDD Products Exhibit the Homogeneity of Commodity Goods

72.     HDD Suspension Assemblies are commodity-like products which are interchangeable among products of the same type and across manufacturers. One Defendant's product for a particular application, such as a particular type/size of disk drive (*e.g.*, 2.5" notebook HDD form factor or 3.5" desktop HDD form factor), is substitutable for another's. It is easier to

---

[21] Hutchinson's 2015 10-K SEC Filing at 12, *available at*
https://www.sec.gov/Archives/edgar/data/772897/000157587215000208/10k.htm
[22] *Id.*

form and sustain a cartel when the product in question is commodity-like because it is easier to agree on prices to charge and to monitor those prices once an agreement is formed.

### 4.    There Is Inelasticity of Demand for HDD Suspension Assemblies

73.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

74.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

75.    Demand for HDD Suspension Assemblies is highly inelastic because there are no close substitutes for these products. In addition, customers must purchase HDD Suspension Assemblies as an essential part of an HDD — or product containing an HDD — even if the prices are kept at a supracompetitive level.

## VII.   CLASS ACTION ALLEGATIONS

76.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, indirectly purchased a product not for resale which included as a component part one or more HDD Suspension Assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

77.     Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

> All persons and entities that indirectly purchased HDD Suspension Assemblies from Defendants in the United States during the Class Period, including the purchase of HDD Suspension Assemblies as a stand-alone replacement product or as a component of new piece of electronic hardware, in the District of Columbia, or any of the following states and commonwealths: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, or Wyoming.

78.     The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased HDD Suspension Assemblies from Defendants.

79.     While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

80.     Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)      whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD Suspension Assemblies sold in the United States;

(b)      the identity of the participants of the alleged conspiracy;

(c)      the duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)      whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)      whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

(f)      whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)      whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)      the effect of the alleged conspiracy on the prices of HDD Suspension Assemblies sold in the United States during the Class Period;

(i)      whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)      whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)     the appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)     the appropriate class-wide measure of damages for the Damages Class.

81.     Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes

82.     Plaintiffs and all members of the Classes are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for HDD Suspension Assemblies purchased indirectly from the Defendants and/or their co-conspirators.

83.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

84.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

85.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

86.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants

## VIII.   TRADE AND COMMERCE AFFECTED

87.     Defendants' anticompetitive scheme had the purpose and effect of unreasonably restraining and injuring competition by protecting HDD Suspension Assemblies from competition and has substantially affected interstate and import commerce.

88.     During the Class Period, the business activities of Defendants occurred within the flow of, and substantially affected, interstate trade and commerce. During the Class Period, Defendants' manufacture and sale of HDD Suspension Assemblies occurred in a continuous and uninterrupted flow of interstate and import trade and commerce.

89.     Defendants manufactured HDD Suspension Assemblies outside the United States that were sold in, or for delivery to, the United States. Defendants also sold foreign-manufactured HDD Suspension Assemblies outside the U.S. for incorporation into products — namely HDDs — that were sold in, or for delivery to, the United States. During the Class Period, HDD Suspension Assemblies and HDDs incorporating affected HDD Suspension Assemblies traveled in, and substantially affected, interstate and import trade and commerce.

## IX.   PLAINTIFFS AND MEMBERS OF THE CLASSES SUFFERED ANTITRUST INJURY

90.     Defendants' price-fixing conspiracy had the following effects, among others:

(a)     price competition has been restrained or eliminated with respect to HDD Suspension Assemblies;

(b)     the prices of HDD Suspension Assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)     indirect purchasers of HDD Suspension Assemblies have been deprived of free and open competition.

91.     During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for HDD Suspension Assemblies.

92.     The markets for HDD Suspension Assemblies, HDDs, and products that incorporate HDDs are inextricably linked and intertwined because the market for HDD Suspension Assemblies exists to serve the other markets. Without HDDs and products that incorporate HDDs, HDD Suspension Assemblies have little to no value because they have no independent utility. The demand for HDDs and products that incorporate HDDs creates the demand for HDD Suspension Assemblies.

93.     HDD Suspension Assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into an HDD. As a result, HDD Suspension Assemblies follow a traceable physical chain of distribution from Defendants to Plaintiffs, and any costs attributable to HDD Suspension Assemblies can be traced through the chain of distribution to Plaintiffs and members of the Classes.

94.     Economics recognizes that any overcharge at a higher level of distribution generally results in higher prices at every level below. Professor Herbert Hovenkamp explains that "[e]very person at every stage in the chain will be poorer" as a result of the anticompetitive price at the top. Professor Hovenkamp also states that "[t]heoretically, one can calculate the percentage of any overcharge that a firm at one distribution level will pass on to those at the next level." Here, HDD manufacturers, wholesalers and retailers passed on the inflated prices of HDD Suspension Assemblies to Plaintiffs and members of the Classes.

95.     Defendants' unlawful agreement enabled them to charge Plaintiffs and members of the Classes prices in excess of what they otherwise would have been able to charge absent Defendants' agreement. These prices were inflated as a direct and foreseeable result of Defendants' anticompetitive conduct. Plaintiffs and members of the Classes suffered an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## X.    PLAINTIFFS' CLAIMS ARE TIMELY

### A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims

96.      Plaintiffs repeat and reallege the allegations set forth above.

97.     Plaintiffs and members of the Classes did not have knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims as a United States consumer set forth herein, until the public announcement of NHK Spring's agreement to plead guilty to the DOJ on July 29, 2019.

98.     Plaintiffs and members of the Classes are purchasers who purchased products, containing HDD Suspension Assemblies manufactured and produced by Defendants. They have not had direct contact or interaction with any Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the DOJ's announcement of NHK Spring's agreement to plead guilty on July 29, 2019.

99.     No information in the public domain was available to Plaintiffs and members of the Classes prior to NHK Spring's agreement to plead guilty to the DOJ on July 29, 2019 that revealed sufficient information to suggest that any one of Defendants was involved in a criminal conspiracy to eliminate competition and fix prices for HDD Suspension Assemblies in the U.S. market. Plaintiffs and members of the Classes had no means of obtaining any facts or information

concerning any aspect of Defendants' dealings with direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

100.     For the aforementioned reasons, the statute of limitations as to Plaintiffs' and members of the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and members of the Classes have alleged in this Complaint.

### B.     Fraudulent Concealment Tolled the Statute of Limitations

101.     In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and members of the Class.  They did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement of NHK Spring's agreement to plead guilty to DOJ on July 29, 2019.

102.     Because Defendants' agreements, understandings and conspiracies were kept secret until July 29, 2019, before that time, Plaintiffs and members of the Classes were not unaware of Defendants' unlawful conduct, and did not know before then that they were paying supracompetitive prices for HDD Suspension Assemblies throughout the United States during the Class Period.

103.     The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

104.     By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing. HDD Suspension Assemblies are not exempt from antitrust regulation, and thus, before July 29, 2019, Plaintiffs and members of the Classes reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HDD suspension assembly prices before July 29, 2019.

105.    Plaintiffs and members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

106.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until July 29, 2019, when DOJ announced NHK Spring's agreement to plead guilty.

107.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs have alleged in this Complaint.

## C.    Defendants' Actions Are a Continuing Violation

108.    In the alternative, this Complaint alleges a continuing course of conduct (including conduct within the limitations periods), and Plaintiffs and members of the Classes are entitled to recover damages it suffered during the limitations period.

109.    A cause of action accrued for Plaintiffs or members of the Classes each time Plaintiffs or members of the Classes purchased an HDD Suspension Assembly sold at a price artificially inflated by Defendants' unlawful agreement.

## XI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1
#### (on behalf of Plaintiffs and the Nationwide Class)

110.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

111.    Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

112.    The acts undertaken by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or undertaken by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

113.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD Suspension Assemblies, thereby creating anticompetitive effects.

114.    The anticompetitive acts were intentionally directed at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD Suspension Assemblies throughout the United States.

115.    The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD Suspension Assemblies.

116.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased HDD Suspension Assemblies have

been harmed by being forced to pay inflated, supracompetitive prices for HDD Suspension Assemblies.

117.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

118.    Defendants conspiracy had the following effects, among others:

(a)     price competition in the market for HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)     prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiffs and members of the Nationwide Class who purchased HDD Suspension Assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

(d)     Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

(e)     The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

(f)     Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF STATE ANTITRUST STATUTES
### (on behalf of Plaintiffs and the Damages Class)

119.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

### Arizona

120.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Arizona Revised Statutes, §§ 44-1401, *et seq.***

121.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

122.    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

123.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

124.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

### California

125.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **California Business and Professions Code, §§ 16700, *et seq.***

33

126.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD Suspension Assemblies at supracompetitive levels.

127.     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, HDD Suspension Assemblies.

128.     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, and stabilizing the price of HDD Suspension Assemblies; and (2) allocating among themselves the production of HDD Suspension Assemblies.

129.     The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased HDD Suspension Assemblies directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

130.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid

34

more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

### District of Columbia

131.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **District of Columbia Code Annotated §§ 28-4501, *et seq.***

132.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

133.    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

134.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

135.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

**Iowa**

136.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Iowa Code §§ 553.1, *et seq.***

137.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

138.    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

139.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

140.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

**Kansas**

141.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Kansas Statutes Annotated, §§ 50-101, *et seq.***

142.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were

deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

143.    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

144.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

145.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50¬101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

## Maine

146.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Maine Revised Statutes, **Maine Rev. Stat. Ann. 10, §§ 1101,** *et seq.*

147.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

148.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

149.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

150.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

### Michigan

151.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Michigan Compiled Laws Annotated §§ 445.771, *et seq.***

152.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

153.    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

154.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

155.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

**Minnesota**

156.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Minnesota Annotated Statutes §§ 325D.49,** *et seq.*

157.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

158.    During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

159.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

160.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

**Mississippi**

161.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Mississippi Code Annotated §§ 75-21-1,** *et seq.*

162.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

163. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

164. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

165. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

### Nebraska

166. Defendants have entered into an unlawful agreement in restraint of trade in violation of **Nebraska Revised Statutes §§ 59-801,** *et seq.*

167. Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

168. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

169.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

170.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

### Nevada

171.     Defendants have entered into an unlawful agreement in restraint of trade in violation of **Nevada Revised Statutes Annotated §§ 598A.010,** *et seq.*

172.     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

173.     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

174.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

175.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and

members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

### New Hampshire

176. Defendants have entered into an unlawful agreement in restraint of trade in violation of **New Hampshire Revised Statutes §§ 356:1,** *et seq.*

177. Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

178. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

179. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

180. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

### New Mexico

181. Defendants have entered into an unlawful agreement in restraint of trade in violation of **New Mexico Statutes Annotated §§ 57-1-1,** *et seq.*

182.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

183.    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

184.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

185.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

### New York

186.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **New York General Business Laws §§ 340, *et seq.***

187.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies when they purchased HDDs containing HDD Suspension Assemblies.

188.     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

189.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

190.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly,

191.     Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

### North Carolina

192.     Defendants have entered into an unlawful agreement in restraint of trade in violation of **North Carolina General Statutes §§ 75-1,** ***et seq.***

193.     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

194.     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

195.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

196.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

### North Dakota

197.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the **North Dakota Century Code §§ 51-08.1-01, *et seq.***

198.     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

199.     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

200.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

201.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

### Oregon

202.     Defendants have entered into an unlawful agreement in restraint of trade in violation of **Oregon Revised Statutes §§ 646.705, *et seq.***

45

203.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

204.    During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

205.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

206.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

## South Dakota

207.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **South Dakota Codified Laws §§ 37-1-3.1,** *et seq.*

208.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

209.     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

210.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

211.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

**Tennessee**

212.     Defendants have entered into an unlawful agreement in restraint of trade in violation of **Tennessee Code Annotated §§ 47-25-101,** *et seq.*

213.     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

214.     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

215.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

47

216.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25¬101, *et seq.*

### Utah

217.   Defendants have entered into an unlawful agreement in restraint of trade in violation of **Utah Code Annotated §§ 76-10-3101, *et seq.***

218.   Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

219.   During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

220.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

221.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

**Vermont**

222.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **Vermont Stat. Ann. 9 §§ 2453,** *et seq.*

223.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

224.    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

225.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

226.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

**West Virginia**

227.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **West Virginia Code §§ 47-18-1,** *et seq.*

228.    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

229.   During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

230.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

231.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

**Wisconsin**

232.   Defendants have entered into an unlawful agreement in restraint of trade in violation of **Wisconsin Statutes §§ 133.01,** *et seq.*

233.   Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

234.   During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

235.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

236.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

237.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

238.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

239.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM  FOR RELIEF
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (on behalf of Plaintiffs and the Damages Class)

240.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

241.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

**Arkansas**

242.    Defendants have knowingly entered into an unlawful agreement in a deceptive and unconscionable restraint of trade in violation of **Arkansas Code Annotated, § 4-88-101,** *et seq.*

243.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at noncompetitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

244.    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

245.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

246.    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

247.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

248.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

## California

249.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the **California Business and Professions Code § 17200, *et seq.***

250.    During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

251.    This claim is instituted pursuant to Section 17203 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200, *et seq.* of the California Business and Professions Code, commonly known as the Unfair Competition Law.

252.    Defendants' conduct as alleged herein violates Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

253.    Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business

and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

254.    Defendants' acts or practices are unfair to consumers of HDD Suspension Assemblies (or products containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code;

255.    Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code;

256.    Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices;

257.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future;

258.    The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for HDD Suspension Assemblies (or products containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

259.    The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

260.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and

benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203.

### District of Columbia

261.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **District of Columbia Code § 28-3901,** *et seq.*

262.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or noncompetitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in the District of Columbia.

263.    The foregoing conduct constitutes an "unlawful trade practice," within the meaning of D.C. Code § 28-3904. Plaintiffs and Class members were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges.

264.    Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has

resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

265.   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

266.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### Florida

267.   Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.***

268.   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

269.    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

270.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

271.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### Hawaii

272.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Hawaii Revised Statutes Annotated §§ 480-1, *et seq.***

273.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

274.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

275.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

276.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**Massachusetts**

277.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mass. G.L. c. 93A, §1 *et seq*.**

278.    Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

279.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

280.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

281.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

282.    Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

283.    By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-

conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

**Missouri**

284.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.***

285.    Plaintiffs and the Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

286.    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Missouri.

287.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

288.    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

289.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

290.    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

291.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Missouri; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

292.    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

293.    As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

294.    Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

**Montana**

295.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.***

296.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Montana; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

297.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

298.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

299.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**New Mexico**

300.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **New Mexico Stat. § 57-12-1, *et seq.***

301.    Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed

61

or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

302.    The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for HDD Suspension Assemblies as set forth in N.M.S.A., § 5712-2E. Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.

303.    There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges.

304.    Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

305. Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

306. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

307. As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

308. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

### New York

309. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.Y. Gen. Bus. Law § 349, *et seq.***

310. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

311. Defendants and their co-conspirators made public statements about the prices of HDD Suspension Assemblies and products containing HDD Suspension Assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively

misrepresented the real cause of price increases for HDD Suspension Assemblies and products containing HDD Suspension Assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

312.    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD Suspension Assemblies were misled to believe that they were paying a fair price for HDD Suspension Assemblies or the price increases for HDD Suspension Assemblies were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

313.    Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

314.    Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD Suspension Assemblies to be injured by paying more for HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

315.    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

316.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York;

(2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

317.    During the Class Period, Defendants' marketed, sold, or distributed HDD Suspension Assemblies in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

318.    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in New York.

319.    Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

### North Carolina

320.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **North Carolina Gen. Stat. § 75-1.1, *et seq.***

321.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

322.    Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been

aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of HDD Suspension Assemblies created the illusion of competitive pricing controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

323.   The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

324.   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

325.   During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

326.     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in North Carolina.

327.     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### Rhode Island

328.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.***

329.     Members of this Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

330.     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Rhode Island.

331.     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair.

332.    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

333.    As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

334.    Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD Suspension Assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

335.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6¬13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### South Carolina

336.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10,** *et seq.*

337.     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

338.     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

339.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

340.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

### Vermont

341.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **9 Vermont § 2451, *et seq.***

342.     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Vermont.

343.     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants owed a duty to disclose such facts, and considering the

69

relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their HDD Suspension Assemblies prices were competitive and fair.

344. Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

345. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

346. Defendants' deception, including their omissions concerning the price of HDD Suspension Assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiffs and the Damages Class)**

347. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

348.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD Suspension Assemblies.

349.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for HDD Suspension Assemblies.

350.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

351.    Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased HDDs containing HDD Suspension Assemblies subject to Defendants' conspiracy would have been futile.

352.    Plaintiffs assert unjust enrichment claims under the laws of each of the states below:

**Alabama**

353.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Alabama at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have benefitted at the expense of the Class from revenue resulting from unlawful overcharges for HDD Suspension Assemblies. It is inequitable for Defendants to accept and retain the benefits received without compensating the Class.

71

**Alaska**

354.    Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in Alaska at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefits bestowed upon them by the Class. Defendants accepted and retained the benefits bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**Arizona**

355.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Arizona at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment and the Class's impoverishment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law.

**Arkansas**

356.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Arkansas at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful

overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## California

357.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in California at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class as a direct result of the unlawful overcharges. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of the Class.

## Colorado

358.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Colorado at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants have benefitted at the expense of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Connecticut

359.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Connecticut at prices that were more than they would have been but for Defendants' actions. Defendants were benefitted in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants have paid no consideration to any other person in exchange for this benefit. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of the Class.

73

### Delaware

360.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Delaware at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law.

### District of Columbia

361.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in the District of Columbia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits.

### Florida

362.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Florida at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class.

Defendants appreciated the benefits bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Georgia

363.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Georgia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class.

364.    Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Hawaii

365.    Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in Hawaii at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Idaho

366.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Idaho at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**Illinois**

367.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Illinois at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Class. It is against equity, justice, and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**Iowa**

368.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Iowa at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies, which revenue resulted from anticompetitive prices paid by the Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of the Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

**Kansas**

369.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Kansas at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Kentucky

370.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Kentucky at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Louisiana

371.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Louisiana at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no other remedy at law.

## Maine

372.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Maine at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Maryland

373.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Maryland at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Massachusetts

374.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Massachusetts at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Michigan

375.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Michigan at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants retained the benefits bestowed upon them under

unjust circumstances arising from unlawful overcharges to the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Minnesota

376.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Minnesota at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated and knowingly accepted the benefits bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Mississippi

377.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Mississippi at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges. Defendants retain the benefit of overcharges received on the sales of HDD Suspension Assemblies, which in equity and good conscience belong to the Class on account of Defendants' anticompetitive conduct. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Missouri

378.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Missouri at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Defendants accepted and

79

retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Class.

## Montana

379.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Montana at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Nebraska

380.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Nebraska at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to the Class.

## Nevada

381.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Nevada at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for HDD Suspension Assemblies. Defendants appreciated the benefits bestowed upon them by the Class, for which they have paid no consideration to any other person. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**New Hampshire**

382.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in New Hampshire at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Under the circumstances, it would be unconscionable for Defendants to retain such benefits.

**New Jersey**

383.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in New Jersey at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from unlawful overcharges to the Class. Defendants have paid no consideration to any other person for any of the unlawful benefits they received from the Class with respect to Defendants' sales of HDD Suspension Assemblies. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

**New Mexico**

384.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in New Mexico at prices that were more than they would have been but for Defendants' actions. Defendants have knowingly benefitted at the expense of the Class from revenue resulting from unlawful overcharges for HDD Suspension Assemblies. To allow Defendants to retain the benefits would be unjust because the benefits resulted from

anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received.

## New York

385.    Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in New York at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies, which revenue resulted from anticompetitive prices paid by the Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of the Class. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

## North Carolina

386.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in North Carolina at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. The Class did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from unlawful overcharges to the Class. The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to unlawful overcharges are ascertainable by review of sales records. Defendants consciously accepted the benefits conferred upon them.

## North Dakota

387.     Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in North Dakota at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

## Oklahoma

388.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Oklahoma at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. The Class has no remedy at law. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

## Oregon

389.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Oregon at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature

of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of the benefit bestowed upon them by the Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

## Pennsylvania

390.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Pennsylvania at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Rhode Island

391.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Rhode Island at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## South Carolina

392.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in South Carolina at prices that were more than they would have been but for Defendants' actions. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from unlawful overcharges to the Class. Defendants realized value from the benefit bestowed upon them by the Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## South Dakota

393.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in South Dakota at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits without reimbursing the Class.

## Tennessee

394.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Tennessee at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class. It would be futile for the Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received indirectly from the Class with respect to Defendants' sales of HDD Suspension Assemblies. It would be futile for the Class to exhaust all remedies against the entities with which the Class has privity of contract because the Class did not purchase HDD Suspension Assemblies directly from any Defendant.

**Texas**

395.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Texas at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. The circumstances under which Defendants have retained the benefits bestowed upon them by the Class are inequitable in that they result from Defendants' unlawful overcharges for HDD Suspension Assemblies. The Class has no remedy at law.

**Utah**

396.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Utah at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**Vermont**

397.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Vermont at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants accepted the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**Virginia**

398.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Virginia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of the benefit bestowed upon them. Defendants should reasonably have expected to repay the Class. The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to inflate the prices of HDD Suspension Assemblies. Defendants have paid no consideration to any other person for any of the benefits they have received from the Class.

**Washington**

399.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Washington at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**West Virginia**

400.     Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in West Virginia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

### Wisconsin

401.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Wisconsin at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

### Wyoming

402.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Wyoming at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants accepted, used and enjoyed the benefits bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

403.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

404.     That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)     an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)     a *per se* violation of Section 1 of the Sherman Act;

(c)     an unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     acts of unjust enrichment by Defendants as set forth herein.

405.     Plaintiffs and members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

406.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

407.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

408.     Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

409.     Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

410.     Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

411.     Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## XIII.  JURY TRIAL DEMANDED

Plaintiffs and members of the Classes hereby demand a trial by jury of all issues so triable.


DATED:  September 20, 2019                    Respectfully submitted,


By:   /s/ *Paul F. Novak*

Paul F. Novak (P39524)
Diana Gjonaj (P746637)
Gregory Stamatopoulos (P74199)
Tiffany Ellis (P81456)
**WEITZ & LUXENBERG P.C.**
3011 West Grand Blvd, Suite 2150
Detroit, Michigan 48202
Tel: (313) 800-4170
pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com
tellis@weitzlux.com

Peggy J. Wedgworth (*admission pending*)
Elizabeth McKenna (*admission pending*)
**MILBERG PHILLIPS GROSSMAN LLP**
One Penn Plaza, 19th Floor
New York, New York 10119
pwedgworth@milberg.com
emckenna@milberg.com
Tel: (212) 594-5300


***Counsel for Plaintiffs and the Proposed Classes***